Scott **WILLIAMS**, Plaintiff–Appellant,

v.

**UNITED STATES DRUG ENFORCE-MENT ADMINISTRATION and United States of America, Defendants–Appellees.**

No. 94–2458.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1995.

Decided April 5, 1995.

Rehearing Denied June 26, 1995.

---

Christopher W. Graul, Vickie Voukidis Blum (argued), Chicago, IL, for Scott Williams.

Elizabeth M. Landes, Asst. U.S. Atty., Crim.Div., Daniel E. May (argued), Office of U.S. Atty., Civ.Div., Appellate Section, Chicago, IL, for U.S. and Drug Enforcement Admin.

Before BAUER, CUDAHY and KANNE, Circuit Judges.

CUDAHY, Circuit Judge.

In the present case, Scott Williams asks us to examine the sufficiency of the forfeiture notice that the Drug Enforcement Administration provided him before asserting its right to monies confiscated after his arrest. The district court, though noting the efficacy of constitutional challenges to a notice's adequacy, found that Williams waited too long to file his claim. It therefore dismissed his claim. Williams failed to file a notice of appeal from this judgment. Instead, approximately one month later, he asked the court to reconsider its ruling. The district court construed his motion as one to set aside the judgment under Fed.R.Civ.P. 60(b), and reaffirmed its earlier dismissal. In light of the discretion accorded district courts under Rule 60(b), we affirm.

## I.

Scott Williams was arrested on April 5, 1989, for the suspected distribution of narcotics. At the time of the arrest, agents found a security box in Williams's bedroom. According to the government, the box contained 144 grams of cocaine, 40 grams of phenylcycline (PCP) and $9500.00 in United States currency. The cash contained in the security box is the subject of this appeal.

Given its proximity to the seized narcotics, the DEA determined that probable cause existed to believe that the money was the product of drug trafficking activities. The agency consequently initiated forfeiture proceedings. On June 21, 1989, the DEA pub-

lished notice of the forfeiture proceeding in *USA Today* for three successive weeks. Ten days later, on July 3, 1989, the DEA's Washington office sent notice of the forfeiture proceeding to Williams's residence, the address he provided when he was released on bond. The notice was ultimately returned marked "unclaimed." Each of the notices contained information that would have apprised Williams of the procedures available to him to contest the proposed forfeiture. Each notice also contained the time limit for filing a claim. On September 21, 1989, when no claim had been filed and when the time limit for doing so had expired, the currency was administratively forfeited to the United States. At that time, Williams did not receive any of the information concerning the forfeiture.

Williams did not receive any of the information concerning the forfeiture because he was residing at the DuPage County Jail. The day after Williams's arrest, April 6, 1989, he had been released on bond. On May 18, 1989, however, Williams was reincarcerated on an unrelated drug charge. The DEA was well aware of Williams's reincarceration. After his arrest on the unrelated drug charge, Williams had weekly conversations with DEA agents. In addition, in June of 1989, one DEA agent apparently visited him in jail. None of the agents ever mentioned the pending forfeiture to Williams. This, despite the fact that one of the agents regularly speaking to Williams had been the agent who filled out the form used to initiate the forfeiture proceedings.

Williams's first efforts to secure the seized money occurred on July 8, 1991, when he sent a notarized letter to the district court, the United States Attorney and the DEA. In this letter, he identified his attorney and demanded the release of his funds. Apparently, no one responded to this letter. Williams's attorney eventually got in touch with a DEA agent. And in September of 1991, according to the government, that agent sent documentation concerning the forfeiture to Williams's attorney. Williams apparently had a second attorney contact the DEA in June or July of 1992, but his inquiries yielded nothing.

Williams next tried to secure his money on July 1, 1993. Then, proceeding *pro se* in the district court, he filed a self-styled "Complaint in Replevin" seeking the return of his funds. The district court, though construing Williams's pleadings liberally in light of his *pro se* status, dismissed his complaint. The court concluded that a two-year statute of limitations governed Williams's request for the court to exercise equitable jurisdiction over the administratively-forfeited property. In light of the fact that the letter Williams had written to federal authorities in July of 1991 indicated that he had prior knowledge of the forfeiture, the district court concluded that his claim was time-barred. The district court therefore entered judgment in favor of the government on January 28, 1994.

On February 28, 1994, Williams, proceeding with counsel, filed a motion asking the district court to reconsider its dismissal. In that motion, Williams claimed that he did not know as a matter of fact that his property had been forfeited when he wrote the July 1991 letter. In addition, he accused the government of misrepresentation. Because Williams's motion had been filed thirty days after the entry of judgment, the district court construed it as a motion to set aside the judgment under Fed.R.Civ.P. 60(b). The district court concluded that Williams's actual knowledge of the forfeiture was immaterial in light of the fact that a claim accrues under federal law when a plaintiff has reason to know of the injury which is the basis of his claim. The court further concluded that any misrepresentation by the government was not material to the basis of its judgment. The district court therefore denied Williams's motion.

Williams filed a timely notice of appeal from this denial, and asks us to review the district court's refusal to reconsider its ruling. Williams concedes that he cannot appeal from the merits of the district court's January 28th judgment in light of the fact that a motion under Rule 60(b) does not toll the time for filing a notice of appeal. And he stated at oral argument that he accepts the district court's conclusion that a two-year statute of limitations governs his claim. We therefore examine only whether the district

court abused its discretion in denying the motion under Rule 60(b). We conclude that it did not.

## II.

■ In reviewing a district court's denial of a motion to set aside judgment under Rule 60(b), we are "exceptionally deferential" and review only for an abuse of discretion. *United States v. Golden Elevator,* 27 F.3d 301, 303 (7th Cir.1994). The rule is intended to be an extraordinary remedy, designed to address mistakes attributable to special circumstances. *See McKnight v. United States Steel Corp.,* 726 F.2d 333, 338 (7th Cir.1984). Under these standards, we affirm the district court's refusal to reconsider.

Both on appeal and in the district court, Williams's primary complaints underscore the constitutional inadequacy of the notice afforded him prior to the institution of forfeiture proceedings. He relies heavily upon *Robinson v. Hanrahan,* 409 U.S. 38, 40, 93 S.Ct. 30, 31, 34 L.Ed.2d 47 (1972), which states that the Due Process Clause requires the government to afford notice that is "reasonably calculated," under all of the circumstances, to apprise a defendant of the pendency of forfeiture proceedings.

The government's conduct was egregious in this case. The same agent that initiated the forfeiture proceedings had several contacts with Williams at the DuPage County Jail. Yet no effort was made to ensure that Williams received notice of the forfeiture proceedings, or of the procedures available to him to contest those proceedings, at this address. The government rather elliptically defends itself by reference to the procedures employed at its Washington office. But this sort of administrative bungling—where the right hand does not know what the left hand is doing—hardly justifies the breach that occurred here. *See Montgomery v. Scott,* 802 F.Supp. 930, 936–37 (W.D.N.Y.1992) ("The most troubling aspect of this case is that the DEA had information it could have used to locate plaintiff, but failed to use it."). Unfortunately, this case only allows us to frown upon the government's behavior. In the procedural posture in which the case has reached us—namely, as an appeal from a

refusal to set aside a judgment under Rule 60(b)—we are unable to address the merits of Williams's claim.

The district court determined that Williams's civil complaint was simply filed too late—the forfeiture proceeding at issue having concluded almost four years prior to the date of filing. In the district court's view, Williams's July 1991 letter evidenced his prior knowledge of the forfeiture. Williams had therefore waited more than two years to file his complaint. In light of the state statute of limitations applicable to constitutional claims, *see Bieneman v. Chicago,* 864 F.2d 463, 468–70 (7th Cir.1988), *cert. denied,* 490 U.S. 1080, 109 S.Ct. 2099, 2100, 104 L.Ed.2d 661 (1989), the district court concluded that Williams's claim was time-barred.

■ Williams's claim of a due process violation is essentially a plea for the court to exercise its equitable jurisdiction. *See generally Linarez v. Department of Justice,* 2 F.3d 208, 212–13 (7th Cir.1993); *Onwubiko v. United States,* 969 F.2d 1392, 1398–99 (2d Cir.1992). As we recognized in *Linarez,* 2 F.3d at 213, the contours of these sorts of claims are largely undefined. We do not, therefore, express any opinion concerning the district court's use of a two-year statute of limitations; Williams does not contest the district court's conclusion that this is the appropriate period to govern equitable claims.

Williams does, however, attack the district court's conclusions under Rule 60(b). He essentially makes two allegations. First, he suggests that the district court mistakenly determined that he knew or should have known about the forfeiture proceedings in light of the lack of evidence on this matter. Second, he suggests that the government's misrepresentations throughout the case justify setting aside the judgment.

■ Rule 60(b)(1) can be used to correct errors made by the court. *See Wesco Products Co. v. Alloy Automotive Co.,* 880 F.2d 981, 985 (7th Cir.1989). The district court did not misapprehend the facts here, however. It simply used Williams's July 1991 letter as evidence that Williams possessed *prior* knowledge of the forfeiture. Factual infer-

ences of this sort are well within the district court's province. The district court also correctly concluded that Williams need not be aware of the details of the forfeiture to begin the running of the limitations period. Williams mailed his letter to the DEA, the district court and the United States Attorney. This action was sufficient to indicate his knowledge that the government was holding the disputed funds. The district court could have concluded that this level of knowledge was sufficient to begin the running of the limitations period. The district court did not, therefore, abuse its discretion in denying relief under Rule 60(b)(1).

Neither did the district court err under Rule 60(b)(3) in determining that the judgment should not be set aside on grounds of "fraud, misrepresentation, or other misconduct of an adverse party." Fed.R.Civ.P. 60(b)(3). The misrepresentation that Williams alleges—a discrepancy in documentation describing parties to a drug transaction—had no relevance whatsoever to the basis of the district court's judgment. And Williams's complaints about the government's actions in conducting the forfeiture are merely reallegations of the merits of his claim.[1] Neither of these alleged misrepresentations was relevant to the theory upon which the court based its judgment—that of the running of the statute of limitations in light of Williams's knowledge that the government possessed the disputed funds. Under these circumstances, the district court did not abuse its discretion in denying relief under Rule 60(b)(3).

### III.

Williams appeals from the denial to set aside a judgment under Fed.R.Civ.P. 60(b). Because we find that the district court did not abuse its discretion under this rule, we

AFFIRM.

---

1. Williams's attempt to make use of Rule 60(b)'s catchall provision is misplaced. "[I]f the asserted grounds for relief fall within the terms of the first three clauses of Rule 60(b), relief under the catchall provision is not available." *Wesco*, 880 F.2d at 983.