In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1703

United States of America,

Plaintiff-Appellee,

v.

Commodity Account No. 549 54930
at Saul Stone & Company,

Defendant,

Lars "Erik" Lindstrom,

Claimant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 8423--Joan B. Gottschall, Judge.

Argued April 21, 2000--Decided July 5, 2000

Before Bauer, Kanne and Evans, Circuit Judges.

Kanne, Circuit Judge.  Lars Erik Lindstrom participated in a pyramid scheme defrauding hundreds of investors and was convicted by a Norwegian court of criminal fraud. Nevertheless, Lindstrom pursued all available means to collect commissions that he allegedly earned on trades executed in connection with the criminal scheme, including contesting the federal forfeitures at issue here. Lindstrom, however, failed to comply with the requirements of the Federal Rules of Civil Procedure for standing to challenge a government forfeiture, and the district court granted summary judgment in favor of the government. We affirm.

I.  History

In 1994, Norwegian authorities began investigating a fraudulent scheme in which several conspirators, including Sture Stig S?derman, Torgbjorn Ertzaas and Lars Erik Lindstrom, had obtained $17 million from 729 Norwegians to invest in American commodities

markets. Under the corporate auspices of Nordisk R?varuf?rmedling S?derman AB, the scheme promised investors a "guaranteed monthly profit" of 2 percent and vouched that the group would reimburse investors for disappointing returns. Marketing brochures assured investors of "the highest possible return without risking the clients' money" and "always sure profits." However, in classic pyramid scheme fashion, the only return investors received from the scheme came directly from the contributions of new investors, and almost all the invested funds eventually were lost through poor trading and malfeasance. For his part, Lindstrom served as a trader for the scheme and invested a portion of the funds in the Chicago commodities exchange, using accounts at Merrill Lynch and Saul Stone & Co., including account number 549 54930 at Saul Stone & Co.

On April 26, 1996, S?derman, Ertzaas and Lindstrom were indicted for gross fraud in Trondheim, Norway. Their trial began on September 9, 1996, and Lindstrom fled the country sometime during the trial and returned to the United States as a fugitive. The trial finished without Lindstrom on November 22, 1996, and all three defendants were eventually convicted in Norway of criminal fraud on January 13, 1997.

After his return to the United States, Lindstrom had scrambled desperately to collect commissions that he allegedly earned on trades executed in connection with the scheme. First, he filed an action in Cook County Circuit Court to recover the commissions under the auspices of Authority, Ltd., a Bahamian shell company utilized in the scheme. However, the Bahamian government liquidated Authority, Ltd. and promptly placed it in receivership, thereby halting Lindstrom's bid to recover the commissions. Still determined, Lindstrom obtained a default judgment in the Bahamas for the commissions against Norwegian Futures & Options Fund, Ltd., yet another corporate entity involved in the investment scheme. Then, in early December 1996, he recorded the judgment in Cook County Circuit Court and won a garnishment order against the Saul Stone account.

Again, however, government intervention frustrated Lindstrom's machinations. On December 20, 1996, citing the use of the Saul Stone account in connection with the fraudulent investment scheme, the federal government won a stay of Lindstrom's garnishment order and filed a forfeiture complaint under 18 U.S.C. sec. 981 against the account in federal district court. On January 3, 1997, the government seized the $685,192.35 balance, and Lindstrom filed an unverified claim asserting that he had "a judgment in his favor . . . now being

approximately $180,000.00 with interest still accruing," evidenced by an attached copy of the Cook County garnishment order. Two years later on February 10, 1999, the district court granted the government's motion for summary judgment against Lindstrom, finding that he lacked statutory standing to challenge the forfeiture because he had not verified his complaint nor filed an answer within twenty days of his claim.

Six months subsequently on August 19, 1999, the United States Marshal Service released Lindstrom into Norwegian custody for extradition, in violation of our order temporarily staying Lindstrom's extradition. While the government's conduct was the subject of our scrutiny beginning in Lindstrom v. Graber, 203 F.3d 470 (7th Cir. 2000), and culminating in our recent reprimand of the United States Attorney's Office, this matter did not involve the forfeiture of the Saul Stone account.

II. Analysis

To initiate a judicial forfeiture, the government must file a verified complaint describing with reasonable particularity the property that is subject to the action, the place of seizure and any allegations required by the statute pursuant to which the action is brought. See Fed. R. Civ. P. Supp., Rule C(2). Claimants to the property at risk of forfeiture must file a verified claim within ten days after process has been executed, stating the interest in the property by virtue of which the claimant demands restitution and a right to defend against the action, and must file an answer within twenty days after the filing of the claim. See Fed. R. Civ. P. Supp., Rule C(6). Lindstrom filed a claim to the account but lacks standing to contest the forfeiture because he failed to verify his claim on oath or solemn affirmation and failed to file an answer within twenty days of his claim. We review the grant of summary judgment de novo. See United States v. All Assets & Equip. of W. Side Bldg. Corp., 58 F.3d 1181, 1186 (7th Cir. 1995).

Lindstrom admits that his claim was unverified but argues that copies of a court order establishing himself as judgment creditor to the Saul Stone account provide sufficient proof of his interest to satisfy the verified claim requirement. However, verification is an "essential element of any claim because of the substantial danger of false claims." See United States v. $103,387.27, 863 F.2d 555, 559 (7th Cir. 1988) (citations omitted); see also United States v. 51 Pieces of Real Property, Roswell, N.M., 17 F.3d 1306, 1318 (10th Cir. 1994); United States v. $2,857.00, 754 F.2d 208, 213 (7th Cir.

1985). Verification forces the claimant to place himself at risk of perjury for false claims, and the requirement of oath or affirmation is not a mere technical requirement that we easily excuse. Other courts have permitted standing without a verified claim in special circumstances. See, e.g., United States v. Various Computers & Computer Equipment, 82 F.3d 582, 585 (3d Cir. 1996) (ruling that a pro se claimant who filed a timely claim and answer could proceed when his claim was based on the district court's prior order of restitution); United States v. One Urban Lot Located at 1 Street A-1, 885 F.2d 994, 1001 (1st Cir. 1989) (allowing a claimant to proceed after she filed a timely verified answer containing all the necessary information for a claim). Nonetheless, in our view, it was proper for the district court to insist on strict compliance with Rule C(6) to establish standing in this case when special circumstances were absent. See, e.g, United States v. $103,387.27, 863 F.2d at 559; United States v. Amiel, 995 F.2d 367, 371 (2d Cir. 1993).

Furthermore, Lindstrom by his own admission filed an answer two years after his claim, well outside the twenty-day window provided by Rule C(6). He argues that his unverified claim informed all concerned parties of the basis for his claim and obviated the need for an answer, but it was proper for the district court to insist upon a timely answer in this case. Again, "[s]trict compliance with Supplemental Rule C(6) is typically required." Amiel, 995 F.2d at 371; see also United States v. $104,674.00, 17 F.3d 267, 269 (8th Cir. 1994). Although Lindstrom claims that he should not be held responsible for his attorney's negligence, his attorney's mistakes are imputed to him and deprive him of standing. See United States v. 7108 W. Grand Ave., 15 F.3d 632, 633 (7th Cir. 1994) ("Claimants in this forfeiture proceeding pose the question whether their former attorney's gross negligence in representing their interests entitles them to another opportunity to litigate. The answer is No."); United States v. 8136 S. Dobson St., 125 F.3d 1076, 1084 (7th Cir. 1997).

Finally, Lindstrom offers an "unclean hands" theory unsupported by precedent that his extradition to Norway should somehow entitle him to contest the forfeiture. The forfeiture proceeding, however, ended six months before Lindstrom's extradition took place, and there is no connection between the two matters. All Lindstrom's mistakes under Rule C(6) occurred in January 1997, when he was free in the United States. While the government's conduct in extraditing Lindstrom over our stay order brought a reprimand from this Court in a separate

proceeding, it has no bearing on the forfeiture of the Saul Stone account.

III.   Conclusion

   For the foregoing reasons, we Affirm the district court's grant of summary judgment.