In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-3894

KYM LOBZUN,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04 C 4065—**Paul E. Plunkett**, *Judge.*

ARGUED JUNE 10, 2005—DECIDED SEPTEMBER 2, 2005

Before FLAUM, *Chief Judge,* and POSNER and KANNE, *Circuit Judges.*

FLAUM, *Chief Judge.* The Drug Enforcement Administration ("DEA") seized a large sum of currency from plaintiff-appellant Kym Lobzun, and after sending Lobzun notice of intention to forfeit the money, declared the property forfeited. Lobzun then filed a motion seeking the return of the property on the ground that the notice provided by the government prior to the forfeiture was constitutionally inadequate. The district court denied the motion, finding that the notice satisfied due process. Lobzun appeals, and for the reasons stated herein, we affirm.

## I. Background

On September 3, 2003, DEA agents seized $379,931 in United States currency from Lobzun in Chicago, Illinois. At the time of the seizure, the currency was in twelve clear plastic heat-sealed packages. The agents gave Lobzun a DEA form entitled "Address Acknowledgment/Receipt for Seized Property." Among other things, the form listed the date, amount of money seized, DEA case number, and the address of the DEA's chief counsel in Arlington, Virginia. The form stated that if the DEA sought to forfeit the seized currency, it would provide Lobzun with written notice. The form also stated that if Lobzun had any questions about her notice, she should send them to the office of the DEA's chief counsel at the address provided. The form indicates that Lobzun advised the agents that her address was: 257 W. King Edward, Vancouver, BC, V54 2J1.

No charges were ever filed against Lobzun in connection with the seizure of funds. Lobzun nevertheless retained an attorney in Canada, John Conroy, to represent her interest in the funds. Conroy advised Lobzun to notify him immediately and provide him with a copy of any notice or correspondence she received from the DEA.

On October 2, 2003, Lobzun told Conroy that she had received a telephone message from Ken Pavlina, a DEA agent in the Chicago office. On October 3, 2003, Lobzun received another message from Pavlina in which he left his telephone number. On October 6, 2003, Conroy contacted Pavlina by telephone. During this conversation, Conroy advised Pavlina that he was representing Lobzun in connection with the September 3, 2003 seizure of funds and provided Pavlina with his contact information. Pavlina told Conroy that Lobzun would receive notice of the seizure.

The DEA sent Lobzun a "Notice of Seizure" dated October 7, 2003. The notice was addressed to "Kym Louise Lobzun

aka Kim Louise Lobzun" and was sent by certified mail to the address Lobzun had provided at the time of the seizure: 257 W. King Edward, Vancouver, BC V542J1 Canada. The notice identified the property in question as $379,931.00 in U.S. Currency seized in Chicago, Illinois on September 3, 2003. The form advised:

> Pursuant to Title 18, U.S.C. Section 983 and Title 19 U.S.C. Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court. **You should review the following procedures very carefully.**

The form further explained the procedures for requesting remission or mitigation of forfeiture and for contesting the forfeiture. To request remission or mitigation, Lobzun would have to file a petition with the Forfeiture Counsel of the DEA within thirty days of her receipt of the notice. In order to contest the forfeiture in district court pursuant to 18 U.S.C. § 983, Lobzun had to "file a claim with the Forfeiture Counsel of the DEA by **November 11, 2003**."

The return receipt for that notice indicates that it was received at the correct address on November 3, 2003. The signature in the space designated for "signature of the addressee," however, is illegible.

Lobzun and her attorney had no further contact with the DEA until December 22, 2003. On that date, Conroy left Pavlina a message stating that Lobzun had not yet received notice of the seizure. Pavlina returned the call on December 29, 2003, and left Conroy a message stating that the DEA's records showed that Lobzun had received written notice of the seizure on November 3, 2003.

As of January 5, 2004, no administrative claims had been filed, and the DEA administratively forfeited the money, claiming title pursuant to 19 U.S.C. § 1609(b). Two days later, on January 7, Pavlina again called Conroy to confirm that Conroy had received his previous message. Conroy called back the same day and informed Pavlina that Lobzun still had not received the notice. He asked Pavlina to provide him with a copy of the notice that purportedly had been sent to Lobzun. The next day, January 8, 2004, Pavlina faxed Conroy a copy of a DEA notice from another case along with a note stating that he was providing a "sample of the notice that was sent to Lobzun." Pavlina explained that, because "the notice is mailed out of [the DEA's] headquarters in Virginia," he did not have access to the original notice that was sent to Lobzun. The same day, the DEA's Asset Forfeiture Section mailed Conroy copies of the notice that had been sent to Lobzun and the signed certified mail return receipt showing that the notice had been received on November 3, 2003. For reasons that are unclear from the record, Conroy did not receive these documents until January 28, 2004.

After he received the January 8, 2004 fax from Pavlina, Conroy consulted with another attorney in California, David Michael. On January 22, 2004, Michael wrote a letter to Douglas Kash, a senior attorney in the DEA's Asset Forfeiture Section, stating that Lobzun had never received notice regarding the seizure. Michael also requested all documentation pertaining to the notice and administrative forfeiture of Lobzun's property. In response, the DEA sent Michael copies of the relevant documents. On February 9, 2004, after reviewing these documents, Michael wrote another letter to Kash advising him that the signature on the return receipt was not Lobzun's. Michael asserted that the DEA should have been aware since November 3, 2003 that Lobzun had not received notice of the forfeiture. He requested that the DEA immediately set aside the forfeiture

and permit Lobzun to file an administrative claim pursuant to 18 U.S.C. § 983 or any other applicable statute or regulation.

In a letter dated February 22, 2004, Kash responded that, although the notice provided by the DEA was legally adequate, as a matter of discretion, it would grant Lobzun thirty additional days to file a petition for remission of the seized currency. The letter referred Michael to the Notice of Seizure for further information. Lobzun did not file such a petition with the DEA.[1]

On June 16, 2004, Lobzun filed a motion for the return of property in district court pursuant to Federal Rule of Criminal Procedure 41(g),[2] arguing that the government's notice to her did not satisfy the constitutional requirements of due process. The district court denied Lobzun's motion, concluding that, although it would have been appropriate for the government to begin the notice process anew once it

---

[1] In her reply brief, Lobzun argues that the government's representation that it allowed her an opportunity to file a late claim is "disingenuous." She reasons that, because the declaration of forfeiture had already been made, the sole remedy available to her was a motion to set aside the administrative forfeiture pursuant to 18 U.S.C. § 983(e). We need not resolve the question of whether petitioner could have filed a petition for remission within the additional thirty-day period referred to in Kash's letter because the only question properly before this Court is whether the original notice of seizure sent by the DEA prior to the forfeiture comported with due process.

[2] Rule 41(g) provides that "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings."

learned that Lobzun had not received the notice that had been sent, the government had satisfied the minimum requirements of due process. Lobzun appeals.

## II. Discussion

The federal government is authorized to forfeit "all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance" as well as "all proceeds traceable to such an exchange." 21 U.S.C. § 881(a)(6). In order to institute a forfeiture action for property valued at $500,000 or less, the government must comply with the notice procedures set forth in 19 U.S.C. §§ 1607-1609. *See* 18 U.S.C. § 981(d); 21 U.S.C. § 881(b). Section 1607(a) of Title 19 requires the appropriate customs officer to send "written notice of the seizure together with information on the applicable procedures . . . to each party who appears to have an interest in the seized article." The statute and regulations also require the government to publish notice of the seizure and intent to forfeit the property for at least three weeks "in a newspaper of general circulation in the judicial district" in which the proceeding for forfeiture is brought. *See id.*; 21 C.F.R. § 1316.75(a).[3] A person claiming an interest in such property has twenty days from the date of the first publication of the notice to file a claim and post a bond. *See* 19 U.S.C. § 1608. If no such claim is filed, the property will be declared forfeited and title will vest in the United States. *See* § 1609.

Federal courts have jurisdiction to review whether the notice provided in the administrative forfeiture proceed-

---

[3] Although publication is not at issue here, the record indicates that the notice in this case was published in *The Wall Street Journal*.

ing afforded the claimant constitutional due process. *Garcia v. Meza*, 235 F.3d 287, 290 (7th Cir. 2000); *Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000). If the notice fails to comport with the requirements of due process, the underlying forfeiture action is void. *Garcia*, 235 F.3d at 290. We review de novo the issue of whether the DEA's notice procedures complied with due process. *Chairez v. United States*, 355 F.3d 1099, 1101 (7th Cir. 2004).

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950), *quoted in Garcia*, 235 F.3d at 290. Absent exceptional circumstances, written notice of forfeiture by certified mail to the claimant's residence satisfies due process, even if the claimant does not receive actual notice. *Garcia*, 235 F.3d at 290; *Krecioch*, 221 F.3d at 981; *see also Dusenbery v. United States*, 534 U.S. 161, 170 (2002) (due process does not require the government to provide actual notice). Due process is not satisfied, however, "if the notifying party knew or had reason to know that the notice would be ineffective." *Krecioch*, 221 F.3d at 980 (holding that written notice sent to claimant's residence after the government knew he had been incarcerated was inadequate).

Lobzun relies on our decision in *Garcia* in arguing that the notice in her case was inadequate because the government learned prior to the forfeiture that she had not received actual notice. She asserts that, once the DEA was informed prior to the forfeiture that she had not received the notice, it was constitutionally obligated to resend the notice. In *Garcia*, we held that written notice of forfeiture proceedings that was returned to the federal government as "undeliverable" five days after it was

sent did not meet the minimum requirements of due process. 235 F.3d at 291. We declined, however, to "impose an affirmative duty upon the government to seek out claimants in each case where its initial notice is returned undelivered or to require actual notice in every case." *Id.* Rather, we envisioned a case-specific approach, following the due process standard set forth in *Mullane*, which requires us to consider all the circumstances of each case to determine whether the notice provided is reasonably calculated to apprise the claimant of the impending proceeding. *Id.*

In *Garcia*, federal agents had seized $21,700 in cash found on top of a bedroom dresser during a search of the plaintiffs' apartment. *Id.* at 288. The plaintiffs attempted to reclaim the money through various courses, including filing an action for conversion in state court as well as a federal claim under the Federal Tort Claims Act. *Id.* at 288-89. One month after the plaintiffs filed their administrative claim (which they had to exhaust before they could pursue a federal tort remedy), the Secret Service sent written notice of impending forfeiture proceedings to each of the potential claimants via Federal Express overnight delivery. *See id.* at 289. Five days later, Federal Express returned each of the letters to the Secret Service indicating that they were undeliverable. *Id.* The government never attempted to resend the notice, and the Secret Service administratively forfeited the funds several months later. *Id.* at 289, 291.

In *Garcia*, as in this case, it was undisputed that the notice was adequate at the time it was sent. *Id.* at 290. The question was whether the government was required to do more after it learned from the third-party carrier that the notice was not received. *Id.* at 291. We summarized the facts in that case as follows:

> While the government may have believed at the time of sending the FedEx that it was providing ade-

quate notice, five days later it was specifically notified that the attempted delivery by Federal Express was not successful. Thus, three months before the government administratively forfeited the plaintiffs' property, it knew for a fact that the plaintiffs had never received written notice of the impending proceeding instructing them how to correctly petition for the return of their property.

*Id.* Under those specific circumstances, we found that the unsuccessful written notice provided to the plaintiffs did not meet the minimum due process standards required under *Mullane*. *Id.*

This case differs significantly from *Garcia* in that here, it is undisputed that the DEA successfully sent notice to the address provided by Lobzun. The delivery was confirmed by a third-party carrier through the return receipt signed at that address. When Lobzun's attorney told Agent Pavlina several weeks later that his client claimed not to have received the notice, Pavlina did not simply ignore Conroy's phone call. He followed up by double-checking the DEA records and again informing Conroy that the notice had been received at Lobzun's address on November 3, 2003. Pavlina received no further response from Lobzun or her attorney throughout the following week, during which time the forfeiture took place. The DEA was not obligated to wait for further communication from plaintiff before proceeding with the forfeiture.

In *Garcia*, we found it significant that the government was aware that the plaintiffs were actively pursuing their interest in the forfeited property. *See id.* ("It is ironic that the government was involved in extended litigation with the plaintiffs, pointedly admonishing them to exhaust their administrative remedy under the [Federal Tort Claim Act], and yet was unable to provide the plaintiffs with actual notice of its ongoing forfeiture proceeding."). In this case, by

contrast, both Lobzun's and her attorney's attempts to pursue Lobzun's interest in a much larger sum of money were comparatively lax. Despite the information provided on her original receipt instructing Lobzun to contact DEA headquarters in Virginia if she had any questions about her claim, plaintiff made no such effort. Furthermore, once the DEA agent informed Lobzun's attorney that the DEA records showed that Lobzun had received notice almost two months earlier, Conroy waited nine days (albeit during the holiday season) to return the call, and even then did so only after another follow-up call from the agent. By that time, the forfeiture had already taken place. Under these circumstances, it was reasonable for the DEA to assume that Lobzun had received the notice but had decided not to file a claim.

Plaintiff is essentially seeking a per se rule requiring the government to resend notice if a potential claimant later says she did not receive the notice despite written documentation from a third-party carrier that the original notice was received at the correct address. We decline to adopt such a rule. The Supreme Court has not required that the government achieve actual notice; "it requires only that the Government's effort be 'reasonably calculated' to apprise a party of the pendency of the action." *Dusenbery*, 534 U.S. at 170. Moreover, the rule advocated by Lobzun would provide incentives for potential claimants to delay in pursuing their claims and then later assert that they never received proper notice. To avoid this kind of deceptive behavior, the government would be forced to achieve actual notice in every case.

We conclude that the notice provided by the DEA to Lobzun was "reasonably calculated, under all the circumstances" to apprise plaintiff of the pendency of the forfeiture proceeding and afford her an opportunity to present her objections. *See Mullane*, 339 U.S. at 314. The DEA did not deprive plaintiff of any process she was due.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision of the district court.

A true Copy:

      Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—9-2-05