**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 24, 2006
Decided February 27, 2006

**Before**

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. ILANA DIAMOND ROVNER, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 04-4080

| | |
|---|---|
| NAJAH MOHAMMAD, | Appeal from the United States |
| *Plaintiff-Appellant,* | District Court for the Northern District of Illinois, Eastern Division |
| *v.* | |
| | No. 04 C 4403 |
| UNITED STATES OF AMERICA, | |
| *Defendant-Appellee.* | Suzanne B. Conlon, |
| | *Judge.* |

**O R D E R**

Najah Mohammad appeals the dismissal of her suit to recover money and jewelry that the Drug Enforcement Administration seized before, but did not declare administratively forfeited until after, the suit was commenced. The district court held that it lacked subject matter jurisdiction over Mohammad's suit because she received written notices of the administrative forfeiture proceedings but failed to file a claim with the DEA asserting an interest in the property. Mohammad argues, however, that the notices were inadequate, in part because an assistant United States attorney left her believing that the filing of her lawsuit in district court was adequate to challenge the seizures. Because we conclude that Mohammad's suit should not have been dismissed without exploring her factual allegations, we vacate the decision and remand for further proceedings.

I.

On April 14, 2004, a magistrate judge issued three seizure warrants for, respectively, a savings account, checking account, and safety deposit box in Mohammad's name located in a bank in Palos Hills, Illinois. The basis for each warrant was a separate affidavit sworn to by a member of a DEA task force who detailed various crimes, including drug trafficking, committed by Mohammad's husband, Fadel Mohammad. When the warrants were issued, Fadel Mohammad was jailed in Cook County awaiting trial on a state drug charge; he already had pleaded guilty to federal drug charges. The affidavits detail information from a confidential informant that Fadel Mohammad garnered between $3 and $4 million in proceeds from illegal activities and laundered the money through several bank accounts, including the accounts at the bank in Palos Hills. The affidavits relate that Fadel Mohammad commonly put his accounts in nominee names, including his wife's. On April 15, 2004, task force agents executed the three warrants and, pursuant to 18 U.S.C. § 881, seized $170,450 in cash plus 112 pieces of jewelry valued at $143,635.

In accordance with 18 U.S.C. § 981(d) and 19 U.S.C. § 1607(a), the DEA on June 3, 2004, mailed Mrs. Mohammad written notice regarding the funds seized from the savings account, and on June 14, 2004, two more written notices regarding the funds seized from the checking account and the jewelry seized from the safety deposit box. The three notices, all using a DEA standard form, informed her that procedures to administratively forfeit the money and jewelry had been initiated:

> Pursuant to Title 18, U.S.C., Section 983 and Title 19, U.S.C., Sections 1602-1619, procedures to administratively forfeit this property are underway. You may petition the DEA for return of the property or your interest in the property (remission or mitigation), and/or you may contest the seizure and forfeiture of the property in Federal court.

The notices further explained the procedures for requesting remission or mitigation of forfeiture and for contesting the forfeiture. To request remission or mitigation, Mohammad was to file a petition with DEA Forfeiture Counsel within 30 days of receiving notice. If she wanted to contest the forfeiture in district court, she had to file a claim of ownership with DEA Forfeiture Counsel by July 8, 2004, with respect to the funds from the checking account, and by July 19, 2004, with respect to the funds in the savings account and the contents of the safety deposit box. The specific language of the notices reads: [Y]ou may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA by July 8, 2004 [for the checking account] and by July 19, 2004 [for the savings account and safety deposit box]. The notices direct that claims be delivered to DEA Forfeiture Counsel at one of two addresses in

Virginia depending on whether the submission was being sent via private courier or regular mail.

Mohammad, though, did not submit a claim to DEA Forfeiture Counsel in Virginia. Instead, on July 1, 2004, she filed in the district court what Charles Murphy, her retained lawyer at that time, labeled as "Plaintiff's Claim for Return of Property Under 18 U.S.C. § 983, *et seq.*, Which Was Seized by the United States Government and is Presently Subject to Forfeiture Proceedings." Section 983, in relevant part, provides that "[a]ny person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure." 18 U.S.C. § 983(a)(2)(A). That statute further requires that a claim "(i) identify the specific property being claimed; (ii) state the claimant's interest in such property; and (iii) be made under oath, subject to penalty of perjury." *Id.* § 983(a)(2)(C). Although § 983 defines the steps to follow in making a claim with the *agency* that seized and holds the property, it is apparent from her submission to the district court that Mohammad thought she was complying with that provision. Her "claim" identifies the seized assets—the funds from the two accounts and the contents of the safety deposit box—and both articulates her alleged interest in those assets and argues that they are not proceeds of her husband's illegal activities. At this point, Mohammad still had seven days before the first deadline to submit a claim to DEA Forfeiture Counsel would expire.

Assistant United States Attorney Lisa Noller entered an appearance for the government on July 13, and the district court ordered that a response to Mohammad's suit be filed by September 3, 2004. On that date the government, through Noller, moved to dismiss the action for lack of subject matter jurisdiction, asserting that Mohammad's failure to file a claim and post bond with DEA Forfeiture Counsel prevented the court from considering her claim. The government also noted that because Mohammad had not submitted claims to the agency by July 8 for the funds in the savings account, and by July 19 for the funds in the checking account and the contents of the safety deposit box, the DEA had issued Declarations of Forfeiture for all of the seized assets in mid-August.

Mohammad, still represented by attorney Murphy, responded with three arguments. First, she contended that the district court should exercise "equitable jurisdiction" over her demand for return of the seized assets because she was misled by AUSA Noller, which deprived her of an adequate remedy at law. Specifically, Mohammad alleged that attorney Murphy contacted the United States Attorney's Office before her deadlines for submitting claims to the DEA expired and was directed to AUSA Noller when he asked to speak with someone about the seizures. Over the course of several telephone conversations (Murphy indicated he could not recall whether the conversations continued after Mohammad's "claim" was filed in

the district court), Murphy and Noller discussed the merits of Mohammad's contention that the DEA had seized assets belonging to her and derived from sources untainted by her husband's criminal activities. At no time, Mohammad insisted, did Noller inform Murphy that he should be speaking instead to DEA Forfeiture Counsel. The only time Noller told Murphy to speak to someone else was when she suggested that he might wish to speak with "an administrative assistant in the forfeiture unit" concerning the translation of Arabic-language documents that Mohammad said would support her contention that the seized assets were not criminally derived. Mohammad explained that "[i]n discussing the merits of Plaintiff's claim—at the very least—AUSA Noller implied that counsel was communicating with the appropriate individual in the Department of Justice." Mohammad also found it noteworthy that it was Noller, not someone at DEA, who faxed Murphy copies of the DEA seizure notices. Because Noller's involvement led her to believe she was adequately contesting the seizures by filing her "claim" in the district court, Mohammad continued, she did not file timely claims with DEA Forfeiture Counsel. Mohammad suggested that Noller stalled her until the time for submitting her DEA claims lapsed by allowing attorney Murphy to believe that she was taking adequate steps to challenge the seizures. Thus, Mohammad reasoned (in a bit of hyperbole), she was deprived of an adequate remedy at law "due to the scheming of the United States Attorney's Office."

Second, Mohammad argued that, because the DEA and the United States Attorney's Office are components of the Department of Justice, the DEA in effect had knowledge of her claim when she made it clear to AUSA Noller that she intended to contest the seizures. Mohammad cited *Santobello v. New York*, 404 U.S. 257, 262 (1971), for the proposition that prosecutors are responsible for "letting the left hand know what the right hand is doing."

Last, Mohammad argued that requiring her to file claims with DEA Forfeiture Counsel as a prelude to challenging the seizures in district court served no meaningful purpose because the very effect of submitting a claim to the agency is to compel the government to proceed with a judicial forfeiture unless the assets are returned or a settlement is reached with the agency. *See* 18 U.S.C. 983(a)(3).

On September 27, 2004, the district court sided with the government and dismissed Mohammad's lawsuit. The court reasoned that it was divested of jurisdiction over the assets even before Mohammad filed her suit because the DEA's administrative forfeiture proceedings were underway. And, the court continued, the only way it could have regained jurisdiction was for Mohammad to submit timely claims with DEA Forfeiture Counsel, which she did not do. Finally, the court held that it could not exercise "equitable jurisdiction" because Mohammad bypassed an adequate remedy at law—the DEA administrative procedures.

Mohammad then moved for reconsideration under Federal Rule of Civil Procedure 59(e), reasserting the arguments she made in her response to the government's motion to dismiss. This motion gave AUSA Noller her first opportunity to respond to Mohammad's allegations about the telephone conversations between the two lawyers. Noller did not deny that she was in contact with Murphy regarding the merits of the proposed forfeitures or that she faxed Murphy documents concerning the seizures. Instead, she argued that she had no responsibility to tell Murphy that the seizures could be contested only by filing a claim with the DEA. The government, she said, "never misled him or told him not to file a claim." Noller further stated that "she suggested that [Murphy] call a forfeiture paralegal," and that "on one occasion, the government suggested to plaintiff's attorney that he should file an administrative claim." After receiving Noller's response, the district court refused to set aside its dismissal order. The court explained that it already had considered Mohamad's arguments, adding that because Mohammad received notice of the administrative procedures her "attempt to blame the United States Attorney's Office for her failure to follow administrative procedures is baseless."

## II.

On appeal Mohammad does not brief, and thus abandons, two of the three arguments she made in the district court. *See, e.g., Ricci v. Arlington Heights, Ill.*, 116 F.3d 288, 292 (7th Cir. 1997). Through new counsel, she no longer contends that she effectively notified DEA Forfeiture Counsel of her intention to challenge the seizures when she conveyed that position to AUSA Noller. Nor does she contend here that it would have served no purpose to submit claims to DEA Forfeiture Counsel after she already had put the matter before the district court by filing her "claim." Mohammad, though, continues to maintain that the district court should have exercised "equitable jurisdiction" over the case because, she says, the seized assets were not derived from her husband's drug dealing, the notices from the DEA are ambiguous and thus inadequate, and those notices, even if literally understandable, were rendered inadequate when AUSA Noller allowed attorney Murphy to believe that Mohammad was dealing with someone authorized to act in the matter.

We review the district court's dismissal of Mohammad's suit de novo. *Linarez v. United States Dep't of Justice*, 2 F.3d 208, 211 (7th Cir. 1993). Section 881(a)(6) of Title 21 authorizes the civil forfeiture of property derived from the proceeds of drug transactions. By initiating administrative forfeiture proceedings pursuant to 19 U.S.C. § 1607(a)—that is, by sending notice of a seizure and proposed forfeiture to parties known to be interested in the property and publishing notice to all others in a newspaper—an agency holding seized property divests the district court of subject matter jurisdiction to review the forfeiture. *Linarez,* 2 F.3d

at 211. The district court remains without jurisdiction unless an interested party timely submits a claim and posts a bond with the seizing agency. *Id.* at 211-12; *see* 19 U.S.C. § 1608. If no claim is filed, the property is forfeited without judicial intervention. *Lobzun v. United States*, 422 F.3d 503, 506-07 (7th Cir. 2005); *Linarez,* 2 F.3d at 211-12.

In *Linarez*, as in this case, the appellant received notice from the DEA telling him that administrative forfeiture proceedings had commenced, and that he must submit a claim to the DEA if he wanted to contest the seizure. *Linarez*, 2 F.3d at 210. The appellant instead sued in the district court to regain the seized assets, but we held that the court lacked subject matter jurisdiction over the case because of the administrative forfeiture proceedings. *Id.* at 213. Notwithstanding, we held out the possibility that a district court might still retain "equitable jurisdiction" even after the commencement of administrative forfeiture proceedings. *Id.* at 213. We explained, though, that a plaintiff seeking equitable relief would have to establish that she "had an inadequate legal remedy and that irreparable injury will result if the court does not act." *Id.* This notion of "equitable jurisdiction" was acknowledged again in *Williams v. United States Drug Enforcement Administration,* 51 F.3d 732 (7th Cir. 1995). In *Williams*, which came to us as an appeal from the denial of relief under Federal Rule of Civil Procedure 60(b), the appellant sued in the district court to recover forfeited assets on the theory that he was denied due process because he did not receive personal notice of the administrative forfeiture proceedings. We characterized this claim as "essentially a plea for the court to exercise its equitable jurisdiction" and observed that "the contours of these sorts of claims are largely undefined." *Id.* at 733-35.

After *Williams*, however, we have moved away from the idea of "equitable jurisdiction" in cases like this one. In *United States v. Duke*, 229 F.3d 627, 629 (7th Cir. 2000), we clarified that jurisdiction to review a claim that notice of an administrative seizure and proposed forfeiture was constitutionally deficient arises under the general federal-question statute, 28 U.S.C. § 1331. That point is now firmly established. *See Lobzun*, 422 F.3d at 507; *Chairez v. United States*, 355 F.3d 1099, 1101 (7th Cir. 2004); *United States v. Howell,* 354 F.3d 693, 695 (7th Cir. 2004); *Krecioch v. United States*, 221 F.3d 976, 980 (7th Cir. 2000). Morever, the Civil Asset Forfeiture Reform Act of 2000, *see* 18 U.S.C. § 983(e), made explicit that an aggrieved party could move to set aside even a completed forfeiture if notice of the administrative forfeiture proceedings were not received. Accordingly, it would seem that Mohammad's invocation of the district court's "equitable jurisdiction" was unnecessary. It clouded what is really a straightforward contention: that the notices of the property seizures and administrative forfeiture proceedings were inadequate. The district court plainly had jurisdiction to decide this narrow question.

Two of the three reasons Mohammad gives for claiming she received inadequate notice are not persuasive. Her first argument—that the seized assets are hers alone and derived from a source independent of her husband's drug dealing—speaks to the underlying merits of the DEA's claimed entitlement to the assets and has nothing to do with whether the agency gave adequate notice of its administrative proceedings. Challenges to the legality of a proposed civil forfeiture are made in the district court "*after* filing a claim of interest and posting a bond with the DEA." *Linarez*, 2 F.3d at 213 (emphasis in original). The very point of submitting a claim to the agency is to compel the government to proceed with a *judicial* forfeiture action in lieu of the administrative route, *see United States v. Commodity Account No. 549 54930*, 219 F.3d 595, 597 (7th Cir. 2000); *Garcia v. Meza*, 235 F.3d 287, 292 n.5 (7th Cir. 2000), and to prevail in district court the government must prove by a preponderance of the evidence that the assets are subject to forfeiture.

Mohammad's second argument, that the notices were inadequate because they are literally confusing, also fails. Due process requires only that notice of a seizure and impending administrative forfeiture be "'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Lobzun*, 422 F.3d at 507 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Mohammad concedes that she received the notices but she argues that they are deficient because they are confusing and contradicted by the underlying forfeiture statutory scheme. But this is not an argument Mohammad made in the district court when opposing the government's motion to dismiss, and that is reason enough to reject it. *See, e.g., Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002).

In any event, the contention lacks merit. The notices state that to contest the seizures in the district court a claimant must start with the agency: "[Y]ou may contest the forfeiture of the seized property in the UNITED STATES DISTRICT COURT. To do so, you must file a claim with the Forfeiture Counsel of the DEA." The notices further stipulate that all submissions must be made to DEA Forfeiture Counsel, and provide the appropriate addresses. Mohammad cannot seriously contend that, standing alone, the notices are unclear. Moreover, we are not persuaded by her suggestion that the forfeiture statutory scheme is confusing and contradictory. The notices set out the steps she had to follow, and until now she has never contended that a misunderstanding about the underlying forfeiture statutes is what caused her and her former lawyer to fail to act.

That leaves Mohammad's final argument, the one she developed most thoroughly in responding to the government's motion to dismiss. Mohammad contends that the DEA notices, even if *otherwise sufficient*, were rendered inadequate by the misleading conduct of AUSA Noller. Mohammad argues (and at

this juncture we accept her factual allegations as true) that Noller, by discussing the merits of the forfeiture matter with attorney Murphy and not telling him that he should be talking to DEA Forfeiture Counsel until it was too late, "held herself out as the appropriate government representative for the resolution of the matter and potential release of the property."  As a consequence, Mohammad argues, she was misled into believing that she did not have to file a claim with the DEA.

On the one hand, Mohammad does not allege that AUSA Noller specifically told Murphy not to contact the DEA, and the government makes a forceful argument that it should not be blamed for Murphy's misunderstanding.  Moreover, any discussions Murphy had with Noller spoke to the underlying merits of the forfeiture, which would be relevant only after she filed her administrative claim with the DEA.  *See Linarez*, 2 F.3d at 213. Further, Noller maintains that the government "suggested to plaintiff's attorney that he should file an administrative claim."  If that assertion is true, then depending on how and when the message was delivered, Mohammad has no legitimate cause for complaint.

On the other hand, if AUSA Noller did not tell attorney Murphy that Mohammad must file an administrative claim with DEA Forfeiture Counsel and that her district-court "claim" was not a substitute, this conduct could be viewed as misleading, even without intending to have that effect.  Judicial forfeitures are initiated by the government, not by the party making a claim to seized property, *see Commodity Account No. 549 54930*, 219 F.3d at 597; *Garcia*, 235 F.3d at 292 n.5, so Mohammad's filing was easily recognized as a nullity.  But Noller (at least according to Mohammad's version of events) remained silent until it was too late rather than informing Mohammad's lawyer that their conversations did not relieve him of the imperative of contacting DEA Forfeiture Counsel.

We find support for Mohammad's position in *Muhammad v. DEA,* 92 F.3d 648 (8th Cir. 1996).  In that case the Eighth Circuit declared an administrative forfeiture void for lack of proper notice where the claimants filed a civil action seeking return of seized assets even before the agency commenced administrative forfeiture proceedings, since the claimants believed that the pendency of their court action excused them from filing a claim and posting bond with the DEA.  *Id.* at 650, 653.  Although, just as in this case, notices were sent by the DEA advising the claimants that administrative forfeiture proceedings were underway, the *Muhammad* court found it significant that the claimants afterwards wrote to the DEA requesting clarification of the appropriate procedures but were met with silence from the agency.  In thus concluding that the notices from the DEA were inadequate under the particular circumstances, the court reasoned that "[a] reasonable person would ordinarily not believe that their government would ignore their inquiry and proceed as if it had never been sent."  *Id.* at 653.

Much the same could be said on these facts if they are as Mohammad represents. Although she did not file suit in district court before administrative proceedings were initiated, she did sue before her deadlines to submit claims with the DEA had expired. And taking her allegations as true, she believed that by filing a "claim" in the district court she was doing what was required to contest the administrative forfeiture of the assets, and it seems that a reasonable person could believe, as Mohammad says she did, that AUSA Noller would have told her attorney that he was talking to the wrong person and filing in the wrong place. Of course, the facts may not be as Mohammad and her former counsel allege, but we conclude that Mohammad, in fairness to her, should have a chance to prove her allegations.

III.

The judgment of the district court is VACATED and the case REMANDED for further proceedings.