## NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 17, 2017[*]
Decided March 17, 2017

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 16-2933

| | |
|---|---|
| UNITED STATES, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Eastern District of Wisconsin. |
| *v.* | No. 14-CV-394 |
| $94,600 IN U.S. CURRENCY, et al., *Defendants.* | Pamela Pepper, *Judge.* |

APPEAL OF:

TYRONE McMILLIAN, JR.
    *Claimant.*

## O R D E R

Tyrone McMillian Jr. seeks to intervene in a forfeiture action brought by the United States against money and property seized from his house. The district court deemed McMillian's proposed claim untimely and ruled that he thus did not have standing to oppose forfeiture. The court then entered default in favor of the government

---

[*] We have agreed to decide this case without oral argument because the issues have been authoritatively decided. FED. R. APP. P. 34(a)(2)(B).

and denied McMillian's motion to reconsider. McMillian challenges these decisions, but we conclude that the district court did not abuse its discretion and affirm.

Juries convicted McMillian of sex trafficking of children by force, 18 U.S.C. § 1591, coercing prostitution, *id.* § 2422(a), and possessing a firearm as a felon, *id.* § 922(g)(1). Before his arrest, law enforcement had seized several items from his home. These included about $94,600 in United States currency, a 2005 Bentley Coupe, a diamond shield pendant, a diamond watch, and a yellow-gold diamond bracelet.

After federal agents learned that McMillian had obtained the seized items using proceeds traceable to other crimes, the government filed a forfeiture complaint against them, *see* 18 U.S.C. § 983(a)(3). The government notified McMillian that under Rule G(5)(a)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, he must file a verified claim to the named properties by May 15 and an answer within 21 days after filing the claim. A claim need only: (1) identify the property being claimed; (2) identify the claimant and state the claimant's interest in the property; (3) be signed by the claimant under penalty of perjury; and (4) be served on the government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D). FED. R. CIV. P. SUPP. R. G(5)(a).

McMillian sought a number of extensions to file his claim. He said that he was being shuttled between prisons and did not have access to his "documents or paperwork." The court granted his first request and gave McMillian until June 15 to file a claim. Shortly before that deadline, McMillian asked the court for another four months; the government said that it did not object to one month, until July 15. Without a ruling from the court, McMillian filed an unsworn answer, but no claim, on June 16. The government advised the court and McMillian that he had not filed a verified claim and that if he failed to do so by July 15, it intended to move for default judgment. McMillian repeated his request for four more months, asserting that mail "is a problem" in prison and he needed "proper documentation."

The district court denied McMillian's motions for extensions beyond July 15 because "any further delay in this case would [be] inimical to the interests of justice." It ignored letters McMillan later wrote asking for more time. In October the government sought entry of default and partial default judgment on all items except the cash, which the court addressed later. McMillian then filed a verified claim and asserted that he had been waiting for the court to rule on his letter requests and that the government was not prejudiced. The government moved to dismiss his claim as untimely.

The district court granted the government's motions. It concluded that McMillian did not file a timely claim and therefore lacked statutory standing to oppose forfeiture. Even if the court had granted his request for a 120-day extension from the deadline of June 15, the court explained, that extension would have expired a week before he filed his claim. McMillian asked the court to reconsider. Expanding on earlier assertions, he argued that he thought he needed to file receipts and proof of ownership with the claim and he had limited access to these materials while shuttled between prisons. The district court denied McMillian's motion.

On appeal McMillian challenges the district court's rulings. He first argues that his unsworn answer and requests for more time showed a timely interest in the property, establishing standing. But McMillian does not dispute that he missed the deadline in Rule G(5) to file a verified claim; and timely filing of a claim is needed to acquire standing to oppose forfeiture. *See United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 597 (7th Cir. 2000) (discussing statutory standing under the predecessor rule). Neither McMillian's unsworn answer nor his requests for more time fulfilled the claim requirements of Rule G(5) for standing. *See United States v. U.S. Currency in the Amount of $2,857.00*, 754 F.2d 208, 213 (7th Cir. 1985); *United States v. $23,000 in U.S. Currency*, 356 F.3d 157, 163 (1st Cir. 2004).

Next McMillian asserts that because his delay was caused by his status as a pro se prisoner in transit, the district court abused its discretion when it dismissed his late claim. The district court could have accepted McMillian's late claim but did not have to. *See U.S. Currency in the Amount of $2,857.00*, 754 F.2d at 215. And its decision to reject the claim was reasonable. First McMillan gave no good reason for his delay. We can assume that, as a prisoner in transit, he lacked access to his regular possessions. But to file a claim he didn't need these things. He needed only to describe the claimed property, swear to his interest in it, and serve the government. FED. R. CIV. P. SUPP. R. G(5)(a). This he could do. Second, he ignored the government's warning that if he did not file a verified claim by July 15 it would move for default. Third, the extra time that he took was substantial: When he filed his claim, more than 90 days had elapsed from the denial of his second request for an extension and more than 120 days elapsed from the original extended deadline.

The district court also reasonably refused to reconsider the dismissal of his untimely claim and the default. McMillian attributed his delay to his erroneous belief that he needed receipts and legal materials, which were not available to him while in transit, to file a claim. But this error does not justify his untimely claim. Mistakes of law

(even by plaintiffs proceeding pro se) generally do not excuse compliance with deadlines. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001). McMillan also argued that he delayed because he was waiting for the court to address his letter requests for more time. But when he wrote those letters, the district court had already decided that delays based on excuses contained in those letters would be "inimical" to justice. Thus for the same reasons the court's initial decision was reasonable, so was its denial of McMillian's motion to reconsider.

We have considered McMillian's remaining arguments, and none has merit.

AFFIRMED.