In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 18-3424

GHEORGUI MARTOV,

*Plaintiff-Appellant,*

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:18-cv-1211 — **Ronald A. Guzmán**, *Judge.*

———————————

SUBMITTED MAY 9, 2019[*] — DECIDED JUNE 17, 2019

———————————

Before FLAUM, HAMILTON, and SCUDDER, *Circuit Judges.*

PER CURIAM. The government arrested Gheorgui Martov
for wire fraud and seized several items of his personal prop-
erty including a watch, $4,035 in cash, a car, and nine firearms.

———————————

[*]We have agreed to decide the case without oral argument because the
briefs and record adequately present the facts and legal arguments, and
oral argument would not significantly aid the court. FED. R. APP.
P. 34(a)(2)(C).

In exchange for Martov's guilty plea, the government agreed not to pursue criminal forfeiture. But the government never agreed to forgo administrative forfeiture proceedings, which it had already initiated by sending notice to Martov and his attorney. Martov responded to the government's notice of administrative forfeiture by filing claims for the car and guns. The government denied both claims and declared the property forfeited.

Martov then brought this action in the district court, seeking the return of the property. The district court denied relief, and we now affirm, as Martov has failed to advance any meritorious arguments. In doing so, however, we note our reservations with the procedural path that the government took in executing the forfeiture.

**I**

A

Martov participated in a wire fraud scheme in which he collected fraudulently obtained debit card numbers and personal identification numbers and then distributed them to others who used the information to make cash withdrawals from ATMs. The conduct cost the victims approximately $1.2 million. The government eventually caught on, and a grand jury indicted Martov on 22 counts of wire fraud in violation of 18 U.S.C. § 1343, four counts of money laundering in violation of 18 U.S.C. § 1956(a)(2)(B)(i), and one count each of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and obstruction of justice in violation of 18 U.S.C. § 1519. The grand jury also advanced two criminal forfeiture allegations totaling $250,000.

When FBI agents arrested Martov on March 24, 2014, they seized a $25,000 watch, $4,035 cash, and a 2008 Mercedes-Benz. The next day, when executing a search warrant at Martov's home, the agents found and seized nine firearms.

Martov eventually pleaded guilty to a single count of wire fraud. Under the plea agreement, the government agreed to dismiss the criminal forfeiture allegations (which it did) but reserved the option to pursue "any administrative or judicial civil claim." The district court sentenced Martov to seven years' imprisonment.

B

Separate and apart from Martov's criminal proceeding, the government initiated an administrative forfeiture proceeding for the property that it seized during Martov's arrest and the search of his home. The applicable statute, 18 U.S.C. § 983, required the government to notify Martov of any forfeiture proceedings within 60 days from the seizures, see *id*. § 983(a)(1)(A)(i), meaning that it had until May 23, 2014 to notify Martov of forfeiture proceedings for the watch, cash, and car (or else return them to Martov, see § 983 (a)(1)(F)) and until May 24 to do the same for the firearms.

The government sent certified mail to Martov at his prison address and to his lawyer regarding the cash on May 16, 2014 and the watch on May 20, 2014. The government did the same for the car on December 23, 2015—of course, by then 21 months had passed since the government's seizure of the car, a plain violation of the 60-day deadline in § 983(a)(1)(A)(i). The record does not make clear when the government notified Martov about the proceedings over the firearms or how it did so. The government's notices advised

Martov that he needed to submit a claim for each piece of property or he would forfeit his rights to it. Martov never filed claims for the watch or cash, and the government declared them forfeited.

But Martov did file claims for the car and guns, triggering certain statutory protections. Specifically, the government had 90 days from the date of Martov's claim to file a complaint, as set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, or return the property. See 18 U.S.C. § 983(a)(3).

The government missed that deadline, waiting five months before denying Martov's claim for the car. And when denying his claim, the government informed Martov that he had ten days during which he "may request reconsideration." See 41 C.F.R. § 128-48.502(e) (explaining that a request for reconsideration may be submitted within ten days from the date of the government's letter denying a claim). When the ten-day deadline passed without word from Martov, the government entered what it called a "Declaration of Abandonment." The Declaration explained that "a claim for the property has been received and denied" and that title to the car had vested in the United States.

As for the firearms, the government again missed its deadline for responding to Martov's claim. Six months after receiving the claim, the government finally agreed to return four of the nine to the care of Martov's brother. On the remaining five guns, the government rejected Martov's claim and deemed them forfeited when Martov did not timely seek reconsideration.

C

What gives rise to this appeal is Martov's filing a motion in the district court, requesting the return of his watch, money, car, and guns. Citing Federal Rule of Criminal Procedure 41(g) (Motion to Return Property), he argued that the government wrongfully seized the property during the initial arrest and search because none of the seized items related to his crime. He also contended that the government violated the plea agreement in his criminal case by taking the property through administrative forfeiture proceedings.

The district court first noted that Rule 41(g) cannot be used to seek the return of property that has been administratively forfeited, so Martov's motion was improper. Moving then to consider whether Martov might otherwise be entitled to relief, the court observed that Martov had failed to argue that the government's notice of the administrative forfeiture proceedings was inadequate. This failure, the district court explained, doomed Martov's case because 18 U.S.C. § 983(e) limited the scope of the court's review to whether the government provided adequate notice of the administrative forfeiture. And in any event, the court added, Martov's plea agreement did not entitle him to relief because the government agreed to forgo only criminal, not administrative, forfeiture proceedings.

## II

On appeal Martov again invokes Rule 41(g) and argues that the government illegally seized his property and then violated the plea agreement by using the tools of administrative forfeiture to take title to it.

## A

We agree with the district court as to the inapplicability of Rule 41(g). The forfeiture proceedings that Martov is challenging are civil, and thus Federal Rule of Criminal Procedure 41 does not apply. See FED. R. CRIM. P. 1(a)(5)(B); *United States v. Sims*, 376 F.3d 705, 707–08 (7th Cir. 2004).

The district court also properly observed that Martov never challenged the adequacy of the government's administrative forfeiture notice. He has not done so on appeal either, altogether omitting any specific challenges to the government's notice letters, or more generally, a due process challenge to the government's conduct or the scheme it has established for executing administrative forfeitures. Martov, therefore, has not offered any valid basis upon which we may grant relief. See *Chairez v. United States*, 355 F.3d 1099, 1101 (7th Cir. 2004) (explaining that the scope of a federal court's review of administrative forfeiture proceedings is limited); see also *Linarez v. United States Dep't of Justice*, 2 F.3d 208, 213 (7th Cir. 1993). The only arguments he does advance—that the government illegally seized his property and also violated the terms of his plea agreement by pursuing administrative forfeiture—are outside the scope of our review and, in any event, appear to lack merit.

A future case may require us to consider the scope and limits, jurisdictional or otherwise, of a challenge to an administrative forfeiture. Some challenges may sound in due process and others in statutory terms. Because these issues are not before us here, their development will have to await another case.

B

We conclude with a few words about the procedural path of the administrative forfeiture the government charted here. The Supreme Court has advised that "[f]orfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach*, 307 U.S. 219, 226 (1939); see also *United States v. Real Properties located at 7215 Longboat Drive (Lot 24)*, 750 F.3d 968, 974 (8th Cir. 2014) (underscoring the same disfavor of forfeiture).

If Martov had preserved and advanced an argument on appeal that the government did not provide adequate notice of administrative forfeiture we would have almost certainly concluded that the notice was adequate. In *Dusenbery v. United States*, 534 U.S. 161 (2002), the FBI sent a claimant written notice via certified mail to the jail where he was housed, and the Supreme Court determined that the government's approach was "clearly acceptable" because it was reasonably calculated to reach him and inform him of the pendency of the administrative forfeiture. See *id*. at 172–73. The government here did even more, sending its notice of administrative forfeiture by certified mail to Martov in jail *and* to his counsel.

But our review of the record also reveals that at several junctures the government fell short of adhering to the standards Congress prescribed in § 983 for implementing administrative forfeiture.

For example, the government did not meet statutory deadlines on several occasions. The government sent notice to Martov concerning the forfeiture of his car long after the man-

dated deadline for doing so had passed. Section 983(a)(1)(A)(i) required the government to notify Martov that it was beginning forfeiture proceedings within 60 days of seizing the car, but the government did not send notice for 21 months. The government also responded to Martov's claims for the car and the guns long after the 90-day deadline Congress prescribed in § 983(a)(3)(A). For reasons unexplained by the record, it took the government five months to respond to Martov's claim for the car and six months to respond to his claim for the guns.

By way of another example, the government never filed a complaint for forfeiture in federal court. As soon as Martov filed claims for the car and guns, § 983 imposed a clear obligation on the government. "Not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims or return the property pending the filing of a complaint." 18 U.S.C. § 983(a)(3)(A). The government did neither here. The government instead denied Martov's claims, informed him that he had ten days to ask the government to reconsider its decision, and then declared the property abandoned when he did not do so. All of this was done, however, despite nothing in § 983 suggesting that Martov needed to request reconsideration to trigger the government's duty to either file a civil complaint or return the property. Also concerning is that the government never warned Martov that his choosing not to seek reconsideration would result in forfeiting the property.

Martov did not contest the forfeiture on any of these grounds in his correspondence with the government, before the district court, or on appeal, and thus they offer no basis of

relief. See *United States v. Wilson*, 699 F.3d 789, 791 (4th Cir. 2012). Nor is the point of our observations to nitpick. We offer them to underscore the gravity of forfeiture and the imperative of taking care to comply with the letter and spirit of the procedural requirements mandated by law. Sound process is important.

AFFIRMED