In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1715
JOSÉ TROCONIS-ESCOVAR,
 Plaintiff-Appellant,
 v.

UNITED STATES OF AMERICA,
 Defendant-Appellee.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Illinois, Eastern Division.
 No. 1:21-cv-01989 — Franklin U. Valderrama, Judge.
 ____________________

 ARGUED DECEMBER 8, 2022 — DECIDED FEBRUARY 1, 2023
 ____________________

 Before RIPPLE, ROVNER, and WOOD, Circuit Judges.
 WOOD, Circuit Judge. Suspecting that José Troconis-Esco-
var was involved somehow in the illegal drug business, the
U.S. Drug Enforcement Agency (DEA) decided to search his
vehicle. There they found $146,000 in cash—funds that they
believed represented proceeds from that business. The agency
accordingly notiﬁed Troconis-Escovar that it intended to ef-
fect an administrative forfeiture of the funds (i.e., to declare
them to be government property). In response to that
2 No. 22-1715

notiﬁcation, Troconis-Escovar’s attorney tried to contest the
forfeiture, but he ﬁled the wrong piece of paper with the
agency—a “petition for remission” rather than a “claim.”
Only a claim may be used to challenge a proposed forfeiture,
and with no claim ﬁled, Troconis-Escovar eventually lost his
money. He is trying to get it back through this lawsuit. The
district court, however, found that it lacked jurisdiction to set
aside the declaration of forfeiture, and so it dismissed the
case. Dismissal was correct, but not because jurisdiction was
lacking. Instead, the case fails on the merits, and so we aﬃrm
but modify the judgment to show that it is with prejudice.
 I
 The DEA seized the money on April 9, 2020. Illegal drug
proceeds are eligible for civil forfeiture under 21 U.S.C.
§ 881(a)(6), subject to the procedural safeguards of the Civil
Asset Forfeiture Reform Act of 2000 (CAFRA), codiﬁed in rel-
evant part at 18 U.S.C. § 983. On August 3, 2020, the DEA sent
a notice to Troconis-Escovar stating its intent to forfeit the
seized money administratively. The notice oﬀered him two
ways to challenge the seizure: (A) ﬁle a “claim” with the DEA
to contest the forfeiture, or (B) ﬁle a “petition for remission or
mitigation.” A claim requires the seizing agency to initiate ju-
dicial proceedings and prove the legality of the intended for-
feiture by a preponderance of the evidence. See
§ 983(a)(3)(A)–(B). A petition for remission or mitigation, in
contrast, asks only that the government exercise its discretion
to reduce the amount seized in whole or in part. See 28 C.F.R.
§§ 9.3, 9.5. The DEA’s notice included a prominent warning,
in bolded, capitalized, and italicized text, about the conse-
quence of failing to ﬁle a claim:
No. 22-1715 3

 TO CONTEST THE FORFEITURE OF THIS
 PROPERTY IN UNITED STATES DISTRICT
 COURT YOU MUST FILE A CLAIM. If you do
 not ﬁle a claim, you will waive your right to contest
 the forfeiture of the asset. Additionally, if no other
 claims are ﬁled, you may not be able to contest the
 forfeiture of this asset in any other proceeding, crim-
 inal or civil.
The notice also detailed how to ﬁle a claim or petition and
where to ﬁnd further information.
 On August 27, 2020, Troconis-Escovar’s lawyer ﬁled a pe-
tition for remission on his behalf. A few days later, the DEA
sent a letter conﬁrming receipt of the “petition for remission.”
Several months later, having received no claim contesting the
forfeiture of the $146,000, the DEA issued a declaration of for-
feiture on February 22, 2021.
 That same day, the DEA received a letter from Troconis-
Escovar stating that his submission of a petition for remission
had been a mistake; he had intended to ﬁle a claim. But as of
the date the DEA received that letter, the claim deadline—
September 7, 2020—had long since expired. The agency there-
fore declined on timeliness grounds to accept the claim or to
set aside the forfeiture declaration, but it gave Troconis-Esco-
var an extra 30 days to supplement his petition for remission
with additional information.
 Troconis-Escovar let that opportunity go by the wayside.
He chose instead to ﬁle a Motion for Return of Property under
Federal Rule of Criminal Procedure 41(g) in the U.S. District
Court for the Northern District of Illinois. He argued that (1)
the district court should exercise its equitable powers to
4 No. 22-1715

excuse his mistake, (2) the DEA’s notice of intent to forfeit was
untimely in violation of CAFRA, and (3) the forfeiture vio-
lated the Eighth Amendment.
 The district court dismissed the case for lack of jurisdic-
tion. It held that Rule 41(g) does not apply to property that
already has been administratively forfeited. It therefore con-
strued Troconis-Escovar’s ﬁling as a motion to set aside a dec-
laration of forfeiture under 18 U.S.C. § 983(e). But the court
concluded that, so understood, the motion could not succeed.
It reasoned that section 983(e) divested it of jurisdiction to
hear any challenge to a completed administrative forfeiture
except for challenges to the suﬃciency of the government’s
notice to interested parties. Troconis-Escovar’s only com-
plaint about the notice was that it was (he asserted) untimely.
The notice was indeed ﬁled after the normal deadline, but as
the government explained, Chief Judge Rebecca Pallmeyer of
the Northern District of Illinois had issued an order extending
the government’s deadline to issue civil forfeiture notices by
60 days at the time in question because of the COVID-19 pan-
demic. The district court found that Troconis-Escovar had
abandoned this argument by failing to respond to this expla-
nation, and it dismissed the suit for lack of jurisdiction. This
appeal followed.
 II
 We consider de novo issues of law underpinning a district
court’s dismissal of a complaint for lack of subject-matter ju-
risdiction. Ill. Ins. Guar. Fund v. Becerra, 33 F.4th 916, 922 (7th
Cir. 2022). If the existence of subject-matter jurisdiction turns
on factual ﬁndings, we review those for clear error. Id.
No. 22-1715 5

 Under Federal Rule of Criminal Procedure 41(g), a person
“aggrieved by an unlawful search and seizure of property or
by the deprivation of property may move for the property’s
return.” This rule is properly invoked to request the return of
seized property before forfeiture proceedings have been initi-
ated. United States v. Sims, 376 F.3d 705, 708 (7th Cir. 2004); see
also United States v. Flournoy, 714 F. App’x 592, 594 (7th Cir.
2018) (“The rule applies to property that the government has
seized, but not to property forfeited to it.”). A party might
properly bring a Rule 41(g) motion, for example, to recover
property seized without probable cause or property no longer
needed as evidence after the conclusion of criminal proceed-
ings. Sims, 376 F.3d at 708. But Rule 41(g) is not the proper
vehicle for challenging an administrative forfeiture.
 Nevertheless, we have encouraged district courts to con-
strue mislabeled Rule 41(g) motions based on their substance.
See Flournoy, 714 F. App’x at 595 (collecting cases). Following
this guidance, the district court analyzed Troconis-Escovar’s
claims as if they had been presented in a motion to set aside a
declaration of forfeiture under 18 U.S.C. § 983(e).
 Under CAFRA, a claimant has the right to obligate the
government to initiate court proceedings and prove by a pre-
ponderance of the evidence that the asset is subject to forfei-
ture. See §§ 983(a)(2)(A), 983(c). To exercise this right, the
claimant must ﬁrst ﬁle a claim with the seizing agency before
the deadline speciﬁed in the notice. See § 983(a)(2)(B). If no
claims are ﬁled, the seizing agency may declare the property
to be administratively forfeited without any judicial process.
The agency’s declaration of forfeiture has “the same force and
eﬀect as a ﬁnal decree and order of forfeiture in a federal ju-
dicial forfeiture proceeding.” 19 U.S.C. § 1609(b).
6 No. 22-1715

 Once an administrative forfeiture is complete, the scope of
judicial review is extremely limited. Pursuant to sec-
tion 983(e), a claimant may ﬁle a motion to set aside a decla-
ration of forfeiture only if she alleges that she never received
suﬃcient notice of the government’s intent to forfeit her prop-
erty and therefore “did not know or have reason to know of
the seizure within suﬃcient time to ﬁle a timely claim.”
§ 983(e)(1)(B). Apart from this narrow provision, Congress
has authorized no other means for challenging a declaration
of forfeiture. Section 983(e) is “the exclusive remedy for seek-
ing to set aside a declaration of forfeiture under a civil forfei-
ture statute.” § 983(e)(5).
 The condition that a claimant must ﬁrst ﬁle a claim with
the seizing agency in order to contest a pending forfeiture
functions as a kind of administrative exhaustion requirement.
So long as a claimant was aﬀorded adequate notice of the
pending forfeiture, she may not seek relief in federal court in
a manner that bypasses the statutorily prescribed process for
contesting the forfeiture.
 Courts disagree about the proper characterization of the
CAFRA process: does it strip courts of jurisdiction to hear
challenges that fall outside of section 983(e)’s ambit, or does it
establish a mandatory claims-processing rule? The Eleventh
Circuit has held that “it lacks jurisdiction to review the merits
of administrative or nonjudicial forfeiture determinations,”
and maintains jurisdiction only to “determin[e] whether the
agency followed the proper procedural safeguards.” Mesa Val-
derrama v. United States, 417 F.3d 1189, 1196 (11th Cir. 2005).
The Ninth Circuit, in contrast, has held that section 983(e) is a
claims-processing rule, because the statute “does not state
that it is jurisdictional, nor is there any evidence in CAFRA’s
No. 22-1715 7

legislative history … that it should be treated as such.” Okafor
v. United States, 846 F.3d 337, 340 (9th Cir. 2017).
 The issue whether section 983(e) is a jurisdiction-stripping
statute raises the antecedent question of what statute grants
jurisdiction to the district court in the first place. Neither party
addressed this, but we have an independent obligation to ex-
amine subject-matter jurisdiction. Bazile v. Fin. Sys. of Green
Bay, Inc., 983 F.3d 274, 281 (7th Cir. 2020). Momentarily setting
aside any potential restrictive effect of section 983(e), we con-
clude that the district court had subject-matter jurisdiction
over Troconis-Escovar’s challenge to the declaration of forfei-
ture under 28 U.S.C. § 1355, which grants district courts ex-
clusive and original jurisdiction over “any action or proceed-
ing for the recovery or enforcement of any fine, penalty, or
forfeiture, pecuniary or otherwise, incurred under any Act of
Congress … .” See Linarez v. U.S. Dep’t of Just., 2 F.3d 208, 211
(7th Cir. 1993) (“The clear and unambiguous language of 28
U.S.C. § 1356, provides that jurisdiction over challenges to the
legality of the seizure of property under the authority of [21
U.S.C.] § 881 initially vests in the district courts. And the
equally pellucid language of 28 U.S.C. § 1355, provides that
the district courts initially have jurisdiction over the subse-
quent civil forfeiture proceedings as well.”).
 Before CAFRA, we described the administrative forfeiture
process established by 19 U.S.C. § 1602–1618 as “divest[ing]
the district court of its jurisdiction over the forfeiture proceed-
ings” unless a claim with the appropriate agency was filed.
Linarez, 2 F.3d at 211; accord Garcia v. Meza, 235 F.3d 287, 290
(7th Cir. 2000). We maintained an exception, however, for
suits challenging whether “the notice given in the administra-
tive forfeiture proceeding afforded the claimant
8 No. 22-1715

constitutional due process.” Garcia, 235 F.3d at 290. When
CAFRA was passed in 2000, it codified this system by includ-
ing in section 983(e) the right to raise a notice-based chal-
lenge—and only a notice-based challenge—to a completed ad-
ministrative forfeiture in federal court. After CAFRA, we con-
tinued to refer to the limitations now found in section 983(e)
as jurisdictional. See, e.g., United States v. Turner, 494 F. App’x
647, 649 (7th Cir. 2012); Mohammad v. United States, 169 F.
App’x 475, 480 (7th Cir. 2006); Chairez v. United States, 355 F.3d
1099, 1101 (7th Cir. 2004).
 We are doubtful, however, whether that characterization
comports with the Supreme Court’s decisions emphasizing
the distinction between statutes that limit subject-matter ju-
risdiction and statutes that create claims-processing rules. 1
See, e.g., Fort Bend County v. Davis, 139 S. Ct. 1843, 1846 (2019)
(“Prerequisites to suit like Title VII’s charge-filing instruction
are not of [jurisdictional] character; they are properly ranked
among the array of claims-processing rules that must be
timely raised to come into play.”); Gonzalez v. Thaler, 565 U.S.
134, 137 (2012) (holding that the statutory requirement that a
habeas corpus petitioner obtain a certificate of appealability is
not jurisdictional); Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154,
157 (2010) (holding that the Copyright Act’s requirement that
copyright holders register their works before suing for in-
fringement “is a precondition to filing a claim that does not

 1 Indeed, we have flagged our concern about this in the past. See, e.g.,

Frey v. EPA, 270 F.3d 1129, 1135 (7th Cir. 2001) (questioning whether Gar-
cia’s description of the claim-filing requirement as jurisdictional was
“technically correct”); Martov v. United States, 926 F.3d 906, 909 (7th Cir.
2019) (noting that a future case may require us to consider the jurisdic-
tional limits of an administrative forfeiture challenge).
No. 22-1715 9

restrict a federal court’s subject-matter jurisdiction”). As the
Court has stressed repeatedly, “[a] statutory condition that re-
quires a party to take some action before filing a lawsuit is not
automatically ‘a jurisdictional prerequisite to suit.’” Reed Else-
vier, Inc., 559 U.S. at 166 (quoting Zipes v. Trans World Airlines,
Inc., 455 U.S. 385, 393 (1982)).
 We need not decide this unbriefed question now. The dif-
ference between a jurisdictional bar and a mandatory claims-
processing rule can be critical to a case’s outcome. But it is
largely inconsequential where, as here, the government has
not waived its enforcement of the precondition.
 To his credit, Troconis-Escovar concedes that the govern-
ment has properly invoked its right to enforce the rule requir-
ing the filing of a claim with the DEA. He requests instead
some form of equitable relief from that rule. But he does not
cite to (and we are not aware of) any post-CAFRA case in
which a federal appeals court has endorsed that approach un-
der similar circumstances. To the contrary, the circuits that
have considered whether to override the claim-filing require-
ment have rejected such arguments. See Conservation Force v.
Salazar, 646 F.3d 1240, 1243 (9th Cir. 2011) (holding that a
claimant who filed a petition for remission rather than a claim
could not later challenge a declaration of forfeiture in court on
grounds unrelated to notice); Malladi Drugs & Pharms., Ltd. v.
Tandy, 552 F.3d 885, 890 (D.C. Cir. 2009) (same); but see Okafor,
846 F.3d at 340 (considering whether to toll the claim deadline
equitably for a claim that was filed one day late).
 Moreover, we note that Troconis-Escovar’s predicament
was not the result of some extraordinary circumstance or gov-
ernment misconduct. His attorney just made a mistake and
did not recognize his error until months after the deadline
10 No. 22-1715

had passed. Careless mistakes of this type are not reason for
courts to exercise their equitable powers to override statutory
requirements. Cf. Lombardo v. United States, 860 F.3d 547, 552
(7th Cir. 2017) (explaining, in context of an attorney who mis-
calculated the expiration of the statute of limitations for his
client’s habeas corpus petition, that “as we, the Supreme
Court, and other courts have consistently held, mistakes or
miscalculations of that sort by a party’s attorney do not satisfy
the extraordinary circumstances element for equitable toll-
ing”). We therefore decline to consider Troconis-Escovar’s re-
quest for equitable relief from the administrative forfeiture.
 The only possible argument Troconis-Escovar can offer
would relate to notice, but that goes nowhere. He challenges
the sufficiency of the notice he received solely by arguing that
it failed to comply with the CAFRA requirement to provide
notice within 60–90 days of the seizure. See §§ 983(a)(1)(A)(i),
983(a)(1)(B). That is enough to bring the claim into the ambit
of section 983(e), even if it were a jurisdictional bar. But he
acknowledges that Chief Judge Pallmeyer issued an order ex-
tending the notice deadlines in civil asset forfeiture cases in
the Northern District of Illinois during the relevant period.
See § 983(a)(1)(C) (enumerating circumstances in which “a
court may extend the period for sending notice”). Troconis-
Escovar offers no explanation for why the DEA’s notice was
not timely under that order, nor does he challenge the lawful-
ness of the order itself. Because he has not plausibly alleged
that the notice he received was inadequate, he is not entitled
to relief under section 983(e).
No. 22-1715 11

 III
 In sum, Troconis-Escovar “does not explain why he
should be able to obtain relief outside § 983 when Congress
has expressly conditioned relief from civil forfeiture on cir-
cumstances that do not apply to him.” Paret-Ruiz v. United
States, 827 F.3d 167, 175 (1st Cir. 2016). Because his argument
about the untimeliness of the DEA’s notice is best understood
as a challenge to the sufficiency of that notice, we amend the
district court’s dismissal for lack of subject-matter jurisdiction
to be a dismissal with prejudice. We AFFIRM the judgment as
amended.